UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>HEATHER COLEMAN,<br><br>Defendant. | No. 2:05-0228-JLQ<br><br>MEMORANDUM OPINION AND ORDER DENYING MOTION TO RECUSE |

Before the court are a number of recent motions filed in the above-entitled matter. One of the motions is the Defendant's Motion To Recuse The District Judge Pursuant to 28 U.S.C. Section 455. The Defendant asks this court to recuse itself from further pre-trial and trial proceedings based upon allegations of bias and prejudice of the undersigned stemming from the court's pre-Indictment handling of a proffered no-custody binding Plea Agreement pursuant to Fed. R. Crim. P. 11(c)(1)C. Since this court may not rule on the other motions while the recusal motion is pending, the court will promptly deal with that motion.

Because the recusal motion is somewhat misleading, a short history of this court's involvement in this matter will be set forth. In the fall of 2004, this court was contacted by the Chief Judge of the Ninth Circuit Court of Appeals who advised me that there were probable criminal charges to be filed against the secretary of the United States District Court Judge sitting in California. The court was informed that the allegations were that the secretary had embezzled several hundred of thousands of dollars from the judge's personal accounts and that all judges in the subject district had recused themselves. The court informed Chief Judge Schroeder that it had never met the employing judge nor his

ORDER - 1

secretary. Chief Judge Schroeder asked that I accept responsibility for the matter if criminal charges were filed. I agreed and a formal designation was signed by the Chief Judge. In October, 2004, this court signed an Order for the appointment of counsel for the Defendant. Since the United States Attorney and all Federal Defenders in the judge's district had also recused themselves from the case, the matter was assigned to the United States Attorney for the District of Nevada and to the Federal Defender for that district.

The court heard nothing further concerning this matter until early June of 2005 when it received a conference call from the Assistant United States Attorney and the Assistant Federal Defender stating that they wished to submit a proposed § 11(c)(1)(C) binding no-custody Plea Agreement to the court for its consideration. Counsel advised that they would also be submitting for background information F.B.I. interviews of the Defendant and the Defendant's own written statement. The proffered Plea Agreement and other materials totaling 19 pages were faxed to the court on June 7, 2005. For the convenience of counsel the court enter an Order changing the venue of the matter to the District of Nevada where it was filed under cause No. N-05-123-JLQ.

After reviewing all of these materials, the court calculated the preliminary Guideline Sentencing Range of 21-27 months. The court then forwarded a letter of June 13, 2005 to counsel, scheduling the arraignment date and expressing a concern as to the appropriateness of a no-custody sentence. The contacts between the court and counsel by telephone and letter were required by reason of the court being based in Spokane, Washington, counsel in Reno, Nevada, and the Defendant residing in Sacramento, California. Based upon the alleged statement's made by the Defendant in her written statements to the F.B.I. as to the reasons for the alleged embezzlements, the court also expressed its concerns to counsel as to the Defendant's true acceptance of responsibility. Those concerns were placed on the record in open court on June 23, 2005, in Reno, Nevada when the Defendant entered a conditional plea of guilty to one count. The transcript of that proceeding reflects the court's concern that it have complete

ORDER - 2

information as to the embezzlement of some $440,000 in order that it could fairly evaluate whether the no-custody binding Plea Agreement should be accepted. The court informed counsel and the Defendant of its concern as to acceptance of responsibility by the Defendant and gave counsel and the Defendant the opportunity to address those concerns. No objection was made as to the expression of the court's concerns or its request for full information to assist it in making the determination as to whether the no-custody Plea Agreement should be accepted. No suggestion was made by the Defendant or her counsel that the court should recuse itself by reasons of its concerns if the court determined not to accept the binding Plea Agreement.

Following the entry of the Defendant's conditional plea of guilty a preliminary Presentence Report was prepared by United States Probation Officer Daniel H. McCaw of the District of Nevada and furnished to counsel for their comments and/or objections. The final Presentence Report, received by the court on August 29, 2005, calculated the Sentencing Guideline Range to be 33 to 41 months and recommended a sentence of 33 months. The court thoroughly reviewed the Report and its recommendation and also reviewed a letter furnished by counsel dated August 5, 2005 from Frank M. Pitre, the attorney for the employer judge, to the Assistant United States Attorney. That letter set forth the attorney and his clients' position that they were neither supporting or opposing the acceptance of the proffered Plea Agreement. While that letter is not part of the formal record, in the event of review of this court's decisions, the reviewing court should have the benefit of that letter.

On August 25, 2005, the court forwarded a letter to counsel informing them of its review of the Presentence Report and the letter of attorney Pitre. The court advised that it could not accept the no-custody Plea Agreement and that if the Defendant wished to stand by her plea of guilty, sentencing would take place in Reno, Nevada on September 28, 2005. The court also asked for further information if sentence was to be imposed, including information concerning living arrangements for the minor children of the

ORDER - 3

Defendant "during a period of incarceration . . ." In order that the court record would be complete a copy of the court's August 25, 2005 letter was filed. Apparently a member of the press, in reviewing the file, also reviewed the court's letter and it is the recollection of this court's staff that a member of the press called its chambers and asked for a copy of attorney Pitre's August 5, 2005, letter, but was informed that such a copy could not be furnished.

Following the court's August 25, 2005, letter to counsel and the file, the court held a telephonic conference call with counsel to determine whether it should proceed to prepare for sentencing under the currently advisory Sentencing Guidelines or whether the Defendant intended to withdraw her plea of guilty. Counsel for the Defendant informed the court that the Defendant intended to withdraw her plea of guilty since it was clear from the court's August 25, 2005 letter that the court intended to impose some period of incarceration. The court therefore set a further hearing on the matter for Reno, Nevada for September 29, 2005 at which time the Defendant informed the court that she wished to withdraw her plea of guilty.

At the September 29, 2005 hearing the court discussed with counsel the time when an Indictment might be returned, dates for pre-trial motions and hearings, estimated length of trial and proposed dates and place of trial. A review of the transcript of that hearing reflects that, *inter alia,* the court discussed the earliest possible date of trial as being November 14, 2005 and the estimated length of trial. The prosecution stated that it estimated it would take it three days to put in its case. However, counsel for the Defendant stated that this would be a six to eight week trial, (see page 7of 9/29/05 transcript) and that he could not be prepared to try the case until May of 2006. (Tr. at page 13, line 18). The court disagreed with the lengthy trial estimate and the proposed May, 2006 trial date since counsel for the Defendant had been assigned the case for almost one year and counsel for the Government agreed to comply with the court's suggestion that all discoverable materials, including *Brady, Giglio, Henthorn, and*

ORDER - 4

*Jencks Act* materials, which had not yet been furnished, should be furnished forthwith. Contrary to the suggestions of counsel for the Defendant throughout all of their recently filed motions that the court set a November 14, 2005, trial date, those suggestions are not supported by the record or the court's Order of September 30, 2005, which stated in part that hearing on pending motions would be held in Sacramento on December 8, 2005 and "[At that time the court will set the date and place of trial."

The rule is clear that a judge assigned to a case who is called upon to accept or reject a proposed binding Plea Agreement has an obligation to make a thorough review of all the relevant factors in determining whether to accept such an Agreement. The court "has a duty to take an active role in evaluating a plea agreement once it has been disclosed to the court." *United States v. Crowell*, 60 F. 3d 199, 204 (5th Cir. 1995). The fact that the judge determines not to accept such an Agreement is not a basis for recusal of the judge and does not require recusal of the judge from presiding over further proceedings in the matter, including trial. *United States v. Gallington*, 488 F. 2d 637 (8th Cir. 1974); *United States v. M. Cepeda Penes*, 577 F. 2d 754 (1st Cir. 1978). The question is whether the judge, in his discretion, determines that the Plea Agreement analysis has resulted in his being biased or prejudiced against the Defendant. Were this not the rule, every time a Plea Agreement is submitted to the assigned judge and the Agreement is rejected on the merits, such a court ruling would result in a *per se* recusal of that judge.

This court's sole role in this case has been to obtain full and complete relevant information from counsel, the Defendant, and through the Presentence Report as to the merits or lack thereof of acceptance of the no-custody Plea Agreement. The only information in this court's possession is that which was derived solely from the court proceedings and the information jointly furnished the court by counsel. The court has received absolutely no extrajudicial information in this case. While receipt of extrajudicial information is no longer an absolute prerequisite to a § 455 recusal, *Liteky*

ORDER - 5

for the Defendant disagreed with those views. However, such a disagreement of counsel or the rulings of court, when made, cannot be the basis for recusal of a trial judge. While this case may be a contentious one, and one that the court might not prefer, judges have a responsibility, particularly when requested by the Chief Judge of the circuit, to fulfill its responsibilities as a judge, absent good cause for recusal. Good cause does not exist in this case. Judges are instructed not to recuse themselves lightly. As observed in *United States v. Snyder,* 235 F. 3d 42, 45-46 (1st Cir. 2000) "Section 455(a) should not be used by judges to avoid sitting on difficult or controversial cases." *Snyder* @ 46 points out that the "unnecessary transfer of a case from one judge to another is inherently inefficient and delays the administration of justice . . ." and noting that "the judicial system would be 'paralyzed' were standards for recusal too low." See also, *Nichols v. Alley,* 71 F. 3d 347, 351 (10th Cir. 1995) (" a judge has as strong a duty to sit where there is no legitimate reason to recuse as he does to recuse when the law and facts require."

In conclusion, while disagreement by counsel with the court's suggested trial schedule has been made readily apparent to the court through counsel's statements and this Motion, such disagreements are not uncommon in judicial proceedings and the court accepts that counsel is proceeding in what he believes are the best interests of his client. As stated in *Liteky* @ 555 "expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display . . .", do not establish bias or impartiality. This court will continue to attempt to avoid such expressions as this case and other cases proceed.

The Defendant's Motion For Recusal must be and is DENIED.

The Clerk of this court shall enter this Order and forward copies to counsel.

**DATED** this 3rd day of November, 2005.

JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE

ORDER - 7